UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| ESTATE OF WAVIE LUSTER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:07-CV-226RM |
| | ) | |
| ALLSTATE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

OPINION and ORDER

On June 18, 2007, personal representative Rick Gikas filed suit on behalf of the estate of Wavie Luster in Lake Circuit Court, alleging that defendant Allstate Insurance Company ("Allstate") refused in bad faith to pay Mrs. Luster's claim for benefits under her homeowner's insurance policy. Allstate removed the action on diversity grounds, and this matter is now before the court on Mrs. Luster's and Allstate's cross-motions for partial summary judgment, as well as each party's motion to strike portions of the opposing party's evidence submitted in support of their respective briefs. For the reasons that follow, the court grants Allstate's motion for summary judgment, and denies Mrs. Luster's motion for summary judgment, and denies the motions to strike as moot.

I. FACTUAL BACKGROUND

Mrs. Wavie Luster was a widowed woman living alone in her house in Merrillville, Indiana. On or about February 10, 1999, at the age of 83, Mrs. Luster applied for homeowner's insurance through Allstate agent Robert Burkus. In the

application, Mrs. Luster said she had been living in the home since 1965 and was living alone. Allstate issued a policy for the property located at 707 West 53rd Avenue in Merrillville, Indiana.

The Allstate Policy. Mrs. Luster's homeowner's insurance policy provided dwelling protection and personal property protection for loss occasioned by fire, lightning, explosion, or smoke and contained a provision that should Mrs. Luster die, coverage would continue to the end of the premium period for her legal representative. The policy provided for coverage to abate if the loss at issue was caused by "[a]ny substantial change or increase in hazard, if changed or increased by any means within the control or knowledge of an insured person," and specified that Allstate would not cover loss caused by "Vandalism or Malicious Mischief if your dwelling is vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief."

Mrs. Luster's Absence from her Home. In October 2001, Mrs. Luster fell and injured herself and was hospitalized. She executed a durable power of attorney with healthcare powers appointing her attorney, Mr. Gikas, and her pastor, Dr. Thomas Wolfe, as co-attorneys-in-fact. Mr. Gikas handled Mrs. Luster's financial matters, including paying her bills. After her hospital stay, Mrs. Luster went to stay at Outlook Manor, which provided a variety of levels of care. Mrs. Luster remained at Outlook Manor from November 2001 until early April 2006, when she was readmitted to the hospital after a fall. When released from this second hospital stay, Mrs. Luster went to Miller's Merry Manor to receive skilled nursing care, and she died about a week later, on April 15, 2006.

During her stay at Outlook Manor, Mrs. Luster regularly visited with Mr. Gikas, and the two discussed the handling of Mrs. Luster's affairs. Mr. Gikas states that, during these visits, Mrs. Luster seemed coherent and refused to have her personal belongings moved to Outlook because she intended to return to her home. Mrs. Luster communicated to Mr. Gikas that she wanted him to continue paying the bills to keep the utilities in place for her return. At Mrs. Luster's direction, Mr. Gikas continued all of the utilities in the home and paid a neighbor to check on the home regularly and take care of all the necessary maintenance and repairs.

Mr. Gikas notified Allstate that he had power of attorney for Mrs. Luster in 2001 and that all future billings should be sent to his Merrillville law office. When Mr. Gikas changed office locations around January 2005, he notified Allstate and received a change of address form that he filled out and returned on February 1, 2005. Following this notice, Allstate sent all future premium billings to Mr. Gikas' new address and continued to accept premium payments. Allstate never contacted Mr. Gikas about Mrs. Luster's health condition or why the premium notices weren't being sent to the address listed on the homeowner's policy. Allstate acknowledges that Mr. Gikas advised of his status as Mrs. Luster's attorney as well as of his change in address, but it contends that no one ever provided notice that Mrs. Luster was no longer living in her Merrillville home following the October 2001 hospital stay. Allstate says it first learned that Mrs. Luster didn't live at the property during the submission of her fire claim.

<u>The Fire Loss</u>. After Mrs. Luster's death in April 2006, Mr. Gikas opened an

estate on Mrs. Luster's behalf and received permission to sell the Merrillville house. Mr. Gikas listed the home for sale through a realtor and continued to pay for utilities and maintenance. About three months later, on July 27, 2006, a fire at the house did extensive damage to the walls, carpeting, furniture, draperies, and clothing inside the house.

The parties disagree about the fire's cause. Because of the court's reading of the policy, resolution of the motions to strike evidentiary material is unnecessary. The parties' factual positions are outlined simply to provide context.

Mr. Gikas hired public adjuster Joe Hoffman to adjust a fire loss claim with Allstate. Mr. Hoffman and Allstate representatives went through the house and discovered various household chemicals in a closet, which Mr. Hoffman suggests could have caused a spontaneous combustion resulting in the fire. Mr. Hoffman examined the entrances to the home and noted that the rear door had been broken and that the house's interior was in disarray. After reviewing the Gary Fire Department's report, which lists the "condition of exterior doors and locks" as "broken," Mr. Hoffman concluded that the broken door and mess inside the house resulted from the fire department's efforts to extinguish the fire. Mrs. Luster's estate argues that given that there were storms in the area that night, and the presence of cleaning fluids and rags in the closet, the fire could have been caused by a lightning strike or spontaneous combustion.

Allstate asserts that off-duty policeman Charles Turner noticed a white male coming up the side door stairs on the Luster house's west side on July 27, and two other people leaving and going back inside the home. Officer Turner

concluded that a heavily built man standing in the church parking lot a block south of the house was serving as a lookout for the people inside the house.[1] Knowing the house was for sale and seemingly unoccupied, Officer Turner contacted local police agencies, but got no response. Officer Turner asked the pastor of the adjacent church to report the individuals to the police. When the police responded to the pastor's call, Officer Turner and the two other officers pursued the individuals in a southeast direction. Officer Turner claims he returned to the house soon after the chase, heard a muffled explosion, and saw the house burning brightly on the inside. He also noticed that the garage entry door had been kicked in, a basement window had been removed, and an upper floor window was damaged.[2] Officer Turner concluded that the people burglarized the house, then intentionally set it on fire.

Officer Remenius, a Lake County Sheriff's Department patrol officer, responded to the call and met with a Gary Police Department officer who told him an off-duty officer had seen five male juveniles running from the residence and pursued them. Officer Remenius' incident report indicates that the Gary Fire Department responded to a report that the house was on fire and advised that the house had been ransacked and intentionally set afire. Gary Fire Department

---

[1] The estate argues that Officer Turner never says that he saw people inside the house and that it would have been impossible to do so because the deadbolt on the side door was secure until the Gary Fire Department broke it to enter and fight the fire.

[2] The estate also contests Mr. Turner's statement of facts regarding the state of the house at the time of the fire. It contends that the basement window was broken, not removed, and that entry to the house wasn't possible from the garage because it was detached.

Battalion Chief Williamson completed a report that says the fire originated from inside a closet. The report also concludes that the fire was intentionally set based on its origin.

On July 31, 2006, Mr. Gikas advised Allstate employee Pat Powell that Mrs. Luster had passed away on April 16 and that no one was living in the house at the time of the fire. Allstate Special Investigation Unit employee Daniel Wood investigated the fire's cause to determine whether arson was involved, and on August 1, Allstate retained Mid-West Forensic Services to perform an cause and origin investigation. On August 28, 2006, Mr. Gikas filed a notice of claim and sworn proof of loss with Allstate as the homeowner's insurance policy required. The proof of loss set forth an inventory of items damaged, the cost and value of those items, and loss of rent.

The report of cause and origin investigator Brian Sauer noted finding debris within an interior closet, including two small metal square containers found in an upright position with a capacity of one gallon or less of liquid per container. Based on this physical evidence and the fire patterns, Mr. Sauer concluded that the fire originated in the closet. He further determined that the fire's cause wasn't accidental, but rather was caused by the intentional ignition of ordinary combustible material by an unidentified open flame device. Mid-West issued its report on August 16, stating that the fire was incendiary. Claims representative Richard Burkus told Mr. Wood that Allstate had no knowledge that the property was unoccupied.

<u>Fire Loss Claim History</u>. Based on its investigation, Allstate sent Mr. Gikas

a reservation of rights letter on October 9, 2006, and examined Mr. Gikas under oath later that month about Mrs. Luster's absence from the house. Mr. Gikas tried to negotiate with Mr. Wood over a several month period but decided to file suit for the estate in state court in June 2007, after receiving no decision on the claim. The estate requested compensatory damages for the loss suffered as a result of the fire, consequential damages for economic loss and emotional distress suffered as a result of Allstate's alleged bad faith refusal to pay Mrs. Luster's claim, and punitive damages for Allstate's allegedly malicious, fraudulent, and oppressive conduct. Allstate sent Mr. Gikas a letter advising that it had completed the investigation and was denying the claim on the basis that there was no insurance coverage because Mrs. Luster had violated the terms of the insurance contract by increasing the hazard by not occupying the house for more than a thirty day period. Allstate removed the case.

Following removal, both parties moved for partial summary judgment and moved to strike portions of the materials submitted in support of the opposing party's summary judgment motion. On October 6, 2008, after learning from Mrs. Luster's summary judgment brief that the homeowner's policy remained in force, Allstate's underwriters canceled the policy, declaring it void as of November 17, 2001 — 31 days after Mrs. Luster left her home on October 16, 2001. Allstate refunded all premiums paid by the estate as of November 17, 2001.

## II. Discussion

### A. Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). No genuine issue of material fact exists when a rational trier of fact could not find for the nonmoving party even when the record as a whole is viewed in the light most favorable to the nonmoving party. O'Neal v. City of Chicago, 392 F.3d 909, 910-911 (7th Cir. 2004). A nonmoving party cannot rest on mere allegations or denials to overcome a motion for summary judgment; "instead, the nonmovant must present definite, competent evidence in rebuttal." Butts v. Aurora Health Care, Inc., 387 F.3d 921, 924 (7th Cir. 2004). The nonmoving party must point to enough evidence to show the existence of each element of its case on which it will bear the burden at trial. Celotex v. Catrett, 477 U.S. 317, 322-323 (1986); Lawrence v. Kenosha Cty., 391 F.3d 837, 842 (7th Cir. 2004).

The existence of cross-summary judgment motions doesn't imply that there are no genuine issues of material fact: "[p]arties have different burdens of proof with respect to particular facts; different legal theories will have an effect on which facts are material; and the process of taking the facts in the light most favorable to the non-movant, first for one side and then for the other, may highlight the point that neither side has enough to prevail without a trial." R.J. Corman

Derailment Servs., LLC v. Int'l Union of Operating Eng'rs, Local 150, 335 F.3d 643, 647-648 (7th Cir. 2003). The court isn't required to grant summary judgment for either side when faced with cross-motions. "Rather, the court is to evaluate each motion on its merits, resolving factual uncertainties and drawing all reasonable inferences against the movant." Crespo v. Unum Life Ins. Co. of O'Regan v. Arbitration Forums, Inc., 246 F.3d 975, 983 (7th Cir. 2003) ("With cross-motions, our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made.").

### B. Insurance Contract Interpretation

The estate alleges that Allstate breached the terms of the homeowner's insurance policy issued to Mrs. Luster when it refused to pay the claim filed on the estate's behalf after fire destroyed the home. Allstate contends that it reasonably denied coverage under either the vandalism or increased hazard provisions of the homeowner's insurance policy. Allstate claims that coverage is excluded because either: 1) Mrs. Luster's home was unoccupied for 30 days immediately before a fire caused by vandalism or malicious mischief or 2) there was a substantial increase in hazard known to Mrs. Luster's estate but no one notified Allstate of the change in use and occupancy of the home preceding the fire. The court must decide whether policy coverage existed at the time of the fire, and if so, whether any of the exclusions applied.

"The interpretation of an insurance policy, like any other contract, is typically a question of law that this [c]ourt can resolve on summary judgment."

Am. Nat. Fire Ins. Co. v. Borns, 2007 WL 2743498, at *3 (N.D. Ind. Sep. 18, 2007) (*citing* Fed. Ins. Co. v. Stroh Brewing Co., 127 F.3d 563 (7th Cir. 1997)); *see also* Morris v. Economy Fire and Cas. Co., 848 N.E.2d 663, 666 (Ind. 2006).

"A federal court sitting in diversity has the obligation to apply the law of the state as it believes the highest court of the state would apply it if presented with the issue." Allstate Ins. Co. v. Keca, 368 F.3d 793, 796 (7th Cir. 2004). Because this case invokes the court's diversity jurisdiction, and neither party raises a conflict of law issue, "'we must apply the state law that would be applied in this context by the' Indiana Supreme Court." Fidelity and Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co., L.P., 25 F.3d 484, 486 (7th Cir. 1994) (*quoting* Kaplan v. Pavalon & Gifford, 12 F.3d 87, 89 (7th Cir. 1993)); *see also* Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc., 136 F.3d 1116, 1120 (7th Cir. 1998) ("[T]he operative rule is that when neither party raises a conflict of law issue in a diversity case, the federal court simply applies the law of the state in which the federal court sits.").

To determine whether Allstate's denial of coverage was reasonable, the court must interpret the homeowner's insurance policy. In Indiana, "[i]nsurance policies are governed by the same rules of construction as other contracts." Am. Family Ins. Co. v. Globe Am. Cas. Co., 774 N.E.2d 932, 935 (Ind. Ct. App. 2002) (*citing* Bosecker v. Westfield Ins. Co., 724 N.E.2d 241, 243 (Ind. 2000)). The goal is to ascertain and enforce the parties' intent as revealed by the insurance contract. Westfield Cos. v. Knapp, 804 N.E.2d 1270, 1274 (Ind. Ct. App. 2004). The court must construe the policy as a whole; language that is clear and unambiguous is given its plain and ordinary meaning. Am. Family Ins. Co. v. Globe Am. Cas. Co.,

774 N.E.2d at 935; *see also* Eli Lilly & Co. v. Home Ins. Co., 482 N.E.2d 467, 470 (Ind. 1985). Policy terms that are ambiguous, meaning reasonable persons would differ as to their meaning, must be construed in favor of the insured and against the insurer. *See* Fidelity and Guar. Ins. Underwriters, Inc. v. Everett I. Brown Co., L.P., 25 F.3d at 486; *see also* Morris v. Economy Fire and Cas. Co., 848 N.E.2d at 666. "[I]nsurers are free to limit liability 'in any manner not inconsistent with public policy, and an unambiguous exclusionary clause is ordinarily entitled to construction and enforcement.'" Erie Ins. Co. v. Adams, 674 N.E.2d 1039, 1041 (Ind. Ct. App. 1997) (*citing* Ramirez v. Am. Family Mut. Ins. Co., 652 N.E.2d 511, 515 (Ind. Ct. App. 1995)). When an insurer seeks to avoid coverage through an exclusion, that exclusion must be plainly expressed in the policy such that the limitation "clearly and unmistakably bring[s] within its scope the particular act or omission that will bring the exclusion into play." Erie Ins. Co. v. Adams, 674 N.E.2d at 1041.

### C. Increase in Hazard Exclusion

Allstate argues that coverage is excluded under the increase in hazard clause. Mrs. Luster's homeowner's policy excludes coverage when there has been a substantial change or increase in hazard when that change or increase occurred by any means within the insured's control or knowledge. According to Allstate, Mrs. Luster's failure to physically live at her house resulted in a substantial change in the house's use or occupancy of which Mrs. Luster, or her legal representative, was required to inform Allstate. Allstate maintains that neither

Mrs. Luster nor Mr. Gikas disclosed that no one was living in Mrs. Luster's house after her October 2001 fall, and this failure to notify caused a substantial change or increase in hazard, justifying Allstate's application of the increase in hazard exclusion. Mrs. Luster's estate asserts that Allstate was on notice that Mrs. Luster wasn't physically present at her house after the October 2001 fall and that Allstate waived its right to rely on the increase in hazard exclusion by continuing to accept premium payments. The estate further claims that Mrs. Luster's absence from her house didn't increase the hazard because her absence didn't cause the fire and any increased hazard disappeared after Mrs. Luster's death.

<u>Change in Use or Occupancy</u>. Everyone agrees Mrs. Luster was absent from her house following her October 2001 fall, after which she was hospitalized and later transferred to a residential nursing home.

The policy doesn't define occupancy, but courts have defined "vacant" as "generally empty or deprived of contents" and "unoccupied" as having "no one . . . living in the dwelling or [having] actual use or possession of the dwelling at the time of the loss." <u>Lundquist v. Allstate Insurance Company</u>, 732 N.E.2d 627, 631 (Ill. App. Ct. 2000) (*citing* <u>Thompson v. Green Garden Mut. Ins. Co.</u>, 633 N.E.2d 1327 (Ill. App. Ct. 1994)); *see also* <u>Myers v. Merrimack Mut. Fire Ins. Co.</u>, 788 F.2d 468, 471 (7th Cir. 1986) (explaining that a dwelling may be unoccupied but not vacant, such as a fully furnished summer home in which the owner only resides in during three months of the year). A house is considered unoccupied when "it has ceased to be used as a customary place of habitation for any considerable length of time." <u>Couch on Insurance</u>, 3d Ed § 94:127 (2008); *see also*

44 Am.Jur.2d Insurance § 1220 (1982) (stating that a house is unoccupied when "it has ceased to be a customary place of habitation or abode, and no one is living or residing in it"); Grannemann v. Columbia Ins. Group, 931 S.W. 2d 502, 505 (Mo. Ct. App. 1996) (noting that occupancy "refers to human habitation and refers to the use of property as a customary and usual place of habitation to which return is contemplated after temporary absence.").

Mrs. Luster never physically returned to her home, and no other individual resided in the house from October 2001 until the fire. Mr. Gikas arranged for Mrs. Luster's neighbor to check on the property periodically, but the estate doesn't contend that the neighbor actually lived there. Despite Mrs. Luster's wish to return to her house, and her leaving her personal belongings inside, her intent doesn't equate to actually occupying the premises. Because the house ceased to be a place of habitation after Mrs. Luster's hospitalization, the house was "unoccupied" for at least thirty consecutive days, beginning on November 17, 2001, well before the fire loss. *Compare* Lundquist v. Allstate Ins. Co., 732 N.E.2d at 631 (finding a question of fact existed as to whether the plaintiff's home was unoccupied based on evidence that family members were present and stayed overnight at the home on several occasions during the 60 days prior to the fire). That Mrs. Luster was no longer living at her house constituted a change in the house's use as a place of habitation or dwelling.

Notice of Change in Occupancy. Because Mrs. Luster's absence constituted a change in the occupancy of her house, the estate had to notify Allstate of the change. The estate contends that Allstate was on notice that Mrs. Luster was no

longer physically present in her house by virtue of Mr. Gikas' two letters to Allstate on Mrs. Luster's behalf. Mr. Gikas notified Allstate that Mrs. Luster had executed a power of attorney and that he was handling her affairs. Mr. Gikas later notified Allstate that he had changed office locations and asked Allstate to update the mailing address for the billing of premiums. According to the estate, these two communications put Allstate on notice that Mrs. Luster was having difficulties, and a reasonable insurer should have taken steps to investigate whether there was an increase in the hazard or a possible breach of the homeowner's policy.

Mr. Gikas' communications about the power of attorney and change of address were insufficient to put it on notice that Mrs. Luster was no longer living in her house. Although Allstate was on notice that Mr. Gikas was handling Mrs. Luster's affairs, this information alone didn't inform Allstate that the house wasn't being used as a residence. Allstate might reasonably have believed that Mrs. Luster was having difficulties, but the estate provides no authority to support its contention that knowledge of an elderly person having problems suffices as notice of a change in use or occupancy.

The estate provides no persuasive authority to support its contention that Allstate had a duty to affirmatively investigate whether Mrs. Luster was occupying her house. *See e.g.*, State Farm Mut. Auto. Ins. Co. v. Price, 396 N.E.2d 134, 137 ("Only where the insurer has sufficient information to give rise to a reason to doubt the representations made is there an obligation to investigate or make further inquiry."). While "[k]nowledge of facts which would be sufficient to lead a reasonably prudent person to inquire about the truth of the matter obligates an

insurer to undertake a reasonable investigation to ascertain the truth," Allstate didn't have knowledge of facts sufficient to constitute notice of a change in occupancy. Johnson v. Payne, 549 N.E.2d 48, 51-52 (*citing* State Farm Mut. Auto. Ins. Co. v. Price, 396 N.E.2d at 136-137). That Mr. Gikas was handling Mrs. Luster's bills would not reasonably lead Allstate to inquire about whether Mrs. Luster was living somewhere else. No reasonable trier of fact could find that the estate provided adequate notice.

Increase in Hazard. The estate says Mrs. Luster's absence from her house didn't increase the hazard because her absence didn't cause the fire. The increase in hazard clause doesn't require the hazard to be the cause of the loss for the exclusion to apply. The fire occurred while the house was unoccupied — while the hazard was increased.

The estate also argues that the increase in hazard abated upon Mrs. Luster's death because she could no longer occupy the house. The estate says Allstate should have chosen different policy language had it intended for coverage to cease if the home was unoccupied after Mrs. Luster's death. The disqualifying condition occurred when Mrs. Luster left her home unoccupied and didn't notify Allstate of her absence. Mrs. Luster's death didn't change the occupancy of the house, and so didn't eliminate the disqualifying condition. Contrary to the estate's contentions, the continued coverage after death provision doesn't provide for the revival of the policy coverage upon the insured's death.[3] The court rejects the

---

[3] Fire coverage may be reinstated after the removal of the disqualifying event, i.e., the home is reinhabited. Aetna Ins. Co. of Hartford, Conn. v. Robinson, 10 N.E.2d

estate's argument that the increase in hazard disappeared, and fire coverage became valid again, upon Mrs. Luster's death. *See e.g.*, Kinneer v. Sw. Fire Mut. Fire Ass'n, 185 A. 194, 195 (Pa. 1936) ("It is a matter of common knowledge that there is more danger of an unoccupied house being destroyed by fire than of one occupied.").

Waiver. Finally, the estate argues that Allstate waived its right to rely on the increase in hazard exclusion by continuing to accept premium payments after Mrs. Luster was absent from her home for more than thirty days. The estate says Allstate received information that would put a reasonable insurer on notice of a policy violation, by virtue of Mr. Gikas' letters, it waived any right to rely on the increase in hazard exclusion by not inquiring into the reasons for the power of attorney and by continuing to accept payments. After the estate filed its summary judgment motion, Allstate responded by trying to refund all premiums paid after Mrs. Luster was absent from her home for more than thirty days in November 2001. The estate also challenges Allstate's attempt to refund premium payments in October 2008 as untimely.

An insurance policy's provision may be waived, or the insurer may be estopped from asserting the provisions by its conduct. Gallant Ins. Co. v. Wilkerson, 720 N.E.2d 1223, 1227 (Ind. Ct. App. 1993). "The rule is firmly established that an insurer is precluded from asserting a forfeiture, where, after acquiring knowledge of the facts constituting a breach of a condition, it has

---

601, 604-605 (Ind. 1937). No one occupied the home after Mrs. Luster was hospitalized following her October 2001 fall, so the disqualifying event wasn't abated.

retained the unearned portion of the premium or has failed to return or tender it back with reasonable promptness." Farmers Conservative Mut. Ins. Co. v. Neddo, 40 N.E.2d 401, 405 (Ind. 1942); *see also* Johnson v. Payne, 549 N.E.2d at 51 ("Ordinarily, a waiver must be predicated upon actual knowledge of all the facts surrounding the enforcement of a condition including those facts which would lead to a denial of liability and those which will necessarily influence the insurer in consenting to waive the condition."). "It is also the rule in Indiana that where an insurance company denies liability on the ground that provisions of its policy have been violated by the assured, it must within a reasonable time after the discovery of such policy violations, return or offer to return the premium." Litiz Mut. Ins. Co. v. Lengacher, 248 F.2d 850, 854 (7th Cir 1957) (*citing* Aetna Ins. Co. of Hartford, Conn. v. Robinson, 10 N.E.2d at 604-605).

Allstate didn't waive its reliance on the increase in hazard exclusion by accepting premium payments after Mrs. Luster's fall and departure from the house because it didn't have knowledge of the breach until after the fire loss. As already explained, the information from Mr. Gikas about the power of attorney wasn't sufficient to place Allstate on notice of any change in occupancy, and Allstate didn't learn of the facts constituting Mrs. Luster's breach until after the fire. Allstate's acceptance of premium payments following Mrs. Luster's absence from her home implies no waiver because Allstate didn't have knowledge of all the material facts affecting its right to rely on the policy exclusions.

Allstate doesn't deny that the estate was entitled to a prompt refund of premiums when it discovered that the home was unoccupied. Allstate explains

that its claims department should've sent a referral to the underwriting department to have the policy canceled, but the underwriting department never received the information. According to Allstate, it wasn't until the estate filed its summary judgment motion that it learned that the policy remained in force. After so learning, Allstate declared the policy void as of November 17, 2001, thirty-one days after Mrs. Luster ceased to occupy the house, and in October 2008, it refunded all premiums paid since November 17, 2001. The estate claims that Allstate's failure to refund the premiums until two years after discovering that the home was unoccupied prevents Allstate from denying coverage.

Under Indiana law, an "insurer is deemed to have waived a defense to coverage under the policy only when the insured is prejudiced by the insurer's delay in notifying the insured of that defense." Barnhill v. Liberty Mut. Fire Ins. Co., 129 F. Supp. 2d 1192, 1201 (N.D. Ind. 2001); *see also* Johnson v. Payne, 549 N.E.2d at 53 ("[P]rejudice to the insured by the insurer's failure to deny coverage is necessary to prove estoppel or implied waiver") (*citing* Protective Ins. Co. v. Coca-Cola Bottling Co., 423 N.E.2d 656, 662 (Ind. Ct. App. 1981)).[4] Allstate's failure to refund Mrs. Luster's premium payments until two years after learning that she was no longer occupying her home at the time of the fire provides half the basis for a waiver or estoppel argument, but the estate doesn't argue that it is was

---

[4] Indiana courts note that there is a technical distinction between waiver and estoppel, but the terms are used interchangeably. Gallant Ins. Co. v. Wilkerson, 720 N.E.2d at 1227 n.3. Waiver is the technical relinquishment of a known right involving both knowledge of the existence of the right and the intent to relinquish it. Id. Estoppel, on the other hand, involves misleading a party entitled to rely on the acts or statements in question and a consequent change of position to that party's detriment. Id.

harmed by the delay or that it acted in detrimental reliance upon Allstate's failure to promptly issue a refund. The estate points to no evidence that Allstate intended to retain the unearned premiums. No reasonable trier of fact could find that Allstate waived its right to deny coverage based on the policy exclusions.

As already explained, Mrs. Luster's absence from her house beginning in October 2001 constituted a change in the use or occupancy of her dwelling of which her homeowner's policy required her to inform Allstate. Although Mr. Gikas informed Allstate that he was acting on Mrs. Luster's behalf, Allstate wasn't provided with sufficient notice that Mrs. Luster was no longer living at her home and, increasing the hazard to the residence premises because an unoccupied home is a greater risk than an occupied house. *See* Perry State Bank v. Farmers Alliance Mut. Ins. Co., 953 S.W.2d at 159 ("[I]t is common knowledge that in many areas a building vacated by a tenant, and left unoccupied, is subject to increased hazards of fire.") (*citing* Couch on Insurance, 3d Ed § 94:105 (2008)). The policy's increase in hazard provision eliminates coverage for the fire loss.

### III. Conclusion

For the foregoing reasons, the court DENIES both Allstate Insurance Company's Rule 56 motion to strike [Doc. No. 37] and Waive Luster's Rule 56 motion to strike [Doc. No. 31] as moot. The court GRANTS Allstate Insurance Company's motion for summary judgment [Doc. No. 26] and DENIES Waive Luster's motion for summary judgment [Doc. No. 23]. The clerk shall enter judgment accordingly.

SO ORDERED.

ENTERED: May 20, 2009

                                            /s/ Robert L. Miller, Jr.
                                            Chief Judge
                                            United States District Court